States. Good morning, Mr. Smith. Good morning, Your Honors. Michael Smith. May it please the Court. Standing in this case is established by two paragraphs in the complaint, paragraphs 65 and 80, which are in the appendix at 38 and 44. Those two paragraphs clearly alleged all elements that were necessary to establish standing. They alleged that the challenged decisions of the federal government have harmed and in three respects, one, they have caused and assisted the Wisconsin tribe in... Can I ask a question? I understand... We're talking about standing and standing can be a very kind of difficult issue to figure out what exactly you're talking about and the extent to which it has to do or somehow bleeds into the question of the merits, actually. But what's puzzling about this when I come up on it, at least, is it seems to me, I mean, your complaint is so clearly with the Wisconsin tribe or tribes, whatever the... And it's hard to understand exactly why you're going after the Department of Interior instead of the people against whom you have the real understandable gripe. And the second part, which I hope that you will reach, is this interesting thing about the 12B1 and whether it's factual or legal. I'm guessing, but one of the things I think that I tripped over in doing this, and it's perfectly ordinary. A 12B1 is not unusual, but somehow when we get to 12... We're so used to dealing with 12B6 and saying, well, it's just a matter of law. We don't want to hear any facts, just a matter of law. Whereas 12B1 is apparently markedly different. And I'm not sure that the district court really faced the issue or helped us understand the issue of whether this was based on fact or based on law. So sometime during as much time as the presider will give you, if you can address both of those for me, that would be helpful. I'll do them both right now, Your Honor. Because in many respects, they sum up the whole case. This is not an inter-tribal dispute. It is a dispute about the decisions and the effect of the decisions of the federal government. Let me use the three elements of harm to show why, to reach really traceability and redressability at the same time, because ordinarily they do travel together. If someone causes harm on doing what they did, ordinarily redresses at least some of it. With respect to the claim that the Wisconsin tribe has used federal recognition of the Oneida Nation name to make legal demands against the Oneida Nation and to mount legal attacks against the Oneida Nation, two documents in the record show that to a fairly well. In the demand letter that the lawyer for the Wisconsin tribe sent to my client, after saying, never use your Oneida Nation again, we are federally recognized as the Oneida Nation. Don't do it anymore. Stop there. That's enough for standing. But they went further and did something that the district court didn't notice. They said in the letter that unless you sign an agreement that we can use our federally recognized name, we're going to sue to cancel your trademarks. My client did not reach the agreement that was demanded to use their federally recognized name. The demand letter only speaks of it in those terms, federally recognized name. The suit to cancel the petitions was filed, and in the suit- I understand what you're saying, and it's important and I want you to continue, but that sounds like you're kind of being extorted by the Wisconsin tribes rather than they're using this in order to extort. Well, I'm not sure exactly what Your Honor means, but I would agree that the Wisconsin tribe used the federal recognition of their name to do the things I just described in the letter. Used or were able to take advantage of? I'm not sure I see the difference, Your Honor. But for the federal recognition of the new name, neither of the dramatic statements, the dramatic demands that they made, would have been possible. They could not have said, never use your name again, and they could not have said- They could have said that. Sorry? They could have said that. Well, these trademarks had been in place for years. For the New York. Correct. And they did not, the Wisconsin tribe did not do that until federal recognition was available and then quickly on the heels exploited the recognition, providing them what they thought was a legal tool, and in fact- Is it a legal tool? Does it enhance their claim? It doesn't. It does in two respects. In the TTAB, paragraph 9 of their amended petition to cancel, explicitly relies on the inability to use their federally recognized name as harm to support the standing in the TTAB. In other words, the district court's analysis of all the claims presented- That hasn't been decided yet, right? That's correct. In fact, the TTAB- Assuming that you or your client certainly is opposing that and saying that that argument doesn't hold water, period, end of story. Well, as to the standing element, they do make a claim that they're inhibited in the use of their federally recognized name and harmed by it, and I don't think we would contend that that's not- I mean, listen. I'm totally sympathetic with your client's position here, but so what? I mean, somebody can come in here and say, I've got a federally recognized name. We see them. Usually they're pro se, and they make some argument about that, but that doesn't matter a hill of beans. Why does that matter a hill of beans here? Because here, first of all, we have facts alleged to support it, and we have proof submitted to support the facts alleged. Going beyond what I think are the fairly dramatic uses of federal recognition in the TTAB, the department actually made a party admission here in which, in writing to the Wisconsin's, said that this change will undoubtedly cause greater confusion. And so discussions now about whether the change will cause confusion are directly inconsistent with that admission. In addition, the Wisconsin's answered, we recognize that concern, which I read as a concession, but then says this change is more consistent with our governmental status. In the context of this case, that's clearly read as vis-a-vis the Oneida Nation, my client in New York. It was a move on the Oneida Nation because in the factual setting here, in all of the history, which I'm not going to recount now, it's pretty clear that this was an effort to achieve an apparent, at least, status and identity versus my client, which was believed to be superior. Why can't the folks in Wisconsin call themselves Oneida Nation? They are of the Oneida tribe. It is a nation. The history shows that— Why can't they say we are Oneida Nation and we want to undo your trademarks and your intellectual property because it really belongs to us because we are the Oneida? You folks have been arguing about this for decades. Your Honor, context matters. If they're whispering it to the wall or saying it in a private conversation, I suppose they can, but federal recognition powerfully affects their ability to do that in the following ways. But the recognition is for the availability of government services. Well, it's much more than that. If you're not on the list, you're not considered federally recognized by the United States. That concerns whether you can exercise any sovereignty at all. It concerns sovereign immunity. It concerns really whether you're an Indian tribe under federal law. But they can exercise sovereign immunity even if they call themselves the Holy Roman Empire. The federal recognition of a tribe includes the recognition of its name, and it has these powerful effects. If the Wisconsin tribe asserts that they are the Oneida Nation in a context where it causes harm to my client and my client objects, either legally or otherwise, whether they can say, but that's our federally recognized name, has a significant effect on that dispute. We know as a matter of history that they have not consistently called themselves that. If you look in the record, the letters they wrote to the Department of the Interior with regard to this name change are on Oneida Tribe of Indians of Wisconsin letterhead. They have to be because when the federal— What in law does the recognition mean? It may have been terribly useful for them to interfere with your client's ability to do their business the way they do the business. But what choice did the Department of the Interior have, and what was the actual legal effect of what you refer to as recognizing it as opposed to the practical effect on your client? Well, there are two different legal effects that I can see automatically. One is that, for instance, the ability to legally claim standing to bring a claim against the Oneida Nation was affected by their ability in the cancellation petition to assert that the absence of an ability to use their federally recognized name was a harm that supported their right to sue at all. But two, and I think this may be more of what your honor is going to, the choice by the Department of the Interior regarding how it federally recognizes an Indian tribe binds all of the other federal agencies, and while I wouldn't say it binds the court, that's not a technical way of putting it, I think it is a fact that courts follow the nature of recognition. In this court, the Oneida Tribe of Indians of Wisconsin has always been referred to that way. Federal agencies will refer to it that way, and they will be confused with respect to the list that they refer to if there is oversimilarity between the names. The states also do that. This is sort of an inside baseball point, but if you look at one of the documents from 1997 or 1998 that the government suggests shows hundreds of years of use by the Wisconsin tribe of the Oneida Nation name, it is an agenda for a signing ceremony for a gaming compact. Not only does it at the top have seals that say, Of Wisconsin, so it doesn't establish anything, but the gaming compact that was signed was signed in the name of the Oneida Tribe of Indians of Wisconsin. Why? Because the state of Wisconsin is never going to deal with an Indian tribe but by its chosen name. And as I say in other contexts, whether the tribe is federally recognized or not constrains its ability to use the name it chooses. Put it this way. What would be the basis? I mean, how would the Department of the Interior go about denying the request? What would it have had to— I think it would be very simple, Your Honor. In this case, this really didn't have to happen. If a judgment in this case at least leads to a fair consideration of all the party's interests, you won't have a decision made that is siloed in the Midwest region that only deals with one tribe, which didn't tell the eastern region, our region or us about it, and you won't have an assistant secretary. The Federal Register notice here indicates that a particular assistant secretary authorized the name change on the list. He is a member of the Wisconsin tribe and a lawyer for the Wisconsin tribe. If this thing goes back for a reconsideration, not much will be required. A couple of meetings, a couple of submissions, and there will be a decision. I don't think I'm bold enough to predict it, but I think it's at least plausible, and I actually think more than that, that when the Department considers all the interests that are at stake here and the policy implications of turning the list of recognized tribes over to the several hundred Indian tribes of the United States to tinker with by unilaterally changing names, and you recognize that these issues that are present here are present all over the country with multiple tribes, I think the Department very well may say the fair thing to do is to go back to the historic practice of using names that adequately distinguish between these tribes. I wanted to answer your other question. You're asking us to make a ruling that you concede would have broad ramifications in an area in which we have zero expertise, and that is in the nomenclature of the Indian nations of the United States. Why should we do something because it's going to encourage a government agency to look again at all of the names of the Indian tribes of the United States? The issue here is standing, and Judge Sack's question was what's the standard here. The standard is very straightforward and simple. The court is required to accept the allegations and the complaint as true and to presume that they embrace all the facts necessary to prove them. If that rule is applied to the paragraphs I've mentioned and then all the other parts of the complaint that talk about the supporting documents, it seems to me to follow almost automatically that the elements of standing are present. The district court made a fatal mistake at the beginning of its opinion. The district court said, I am not going to take the allegations of the complaint as true because there's a standard review section in the court's opinion, and I'm not going to draw reasonable inferences. The court misunderstood the difference, and this goes to your initial question, Judge Sack, between the fact that a standing motion is a 12B1 motion and therefore called a jurisdictional motion, and in case and controversy sense it surely is, and whether or not the facts of the complaint are disputed and there is fact-finding. This court's recent... Are you saying that in this case that's what the district court did was to make it fact-based and not legally based? I'm saying exactly the opposite. I'm saying the court said, the court misunderstood the standard here. Realizing that it was a 12B1 motion, she thought it necessarily challenged all of the allegations of the complaint. The law is, as far back as Justice Scalia's decision for the court in Lujan and as recently as this court's crude decision, the law is that unless the district court is resolving disputes about fact, in other words, doing fact-finding, unless that occurs, the standard I've described to you obtains. The allegations must be accepted. How do we know when the court is doing fact-finding? I mean, how do we know? It calls for a hearing, considers evidence that's submitted, says I'm now doing fact-finding. How? Well, I suppose there could be a number of ways. If the court says I am, you could look to see if that's true. Here, there is nothing in the court's opinion to indicate fact-finding, and there were no disputes about the facts. The government offered two documents that it claimed went to redressability, the agenda and the other document from 1997 and 1998. They did not dispute any facts in the complaint, and probably more important, the district court did not resolve any disputes about facts in the complaint. It follows from that that the ordinary rule applies, and there clearly was no fact-finding. As a consequence, there's no deference. There's no clearly erroneous review. There's de novo review, and in fact, the Department of the Interior's brief says review here is de novo, which means necessarily that there was no finding of fact, no factual dispute resolution in the district court. Okay. I say I've used my time. Thank you, Mr. Smith. Mr. Shifton. Good morning, Your Honors. Ben Shiftman from the Department of Justice on behalf of the APILI, the Department of Interior. Your Honors, with respect to my opposing counsel, this is a dispute between two federally recognized tribes that for centuries have shared a history and have shared the word Oneida in their names. Several years ago, both tribes opted to change their names, and plaintiff now sues the Department of the Interior, seeking to impose a procedure that exists nowhere in the law upon the department. Well, it's trying to get the Department of the Interior to undo what it did as a recognition of the Wisconsin tribe, right? I've got that right. I think that is how plaintiff's counsel would characterize it, but federal recognition in this case occurred in the 1800s. The recognition of a name is not a term that appears in the law. The applicable law here, 25 U.S.C. 5123, merely says the Secretary of Interior shall approve the Constitution, dot, dot, dot, within 45 days, dot, dot, dot, unless he finds it violates federal law. That's the only role for Interior here. Interior is not recognizing this or recognizing that. All Interior does is look to whether there is a clear violation of federal law. Are you making a 12b-6 or a 12b-1 argument? We are in agreement that the court did not find facts, and so this court's review is de novo. We did introduce evidence, factual evidence, that can test plaintiff's factual findings in the form of the allegations in the form of the documents referenced that are basically Wisconsin tribe documents that show them referring to themselves as the Oneida Nation. And this is relevant for several reasons, most notably because of the redress here. There is nothing the Department of the Interior can do to stop the Oneida Nation from calling itself that, as indeed its counsel. Is that because of the language you read which said that they shall record these names as given? It's for that, the reason of the provision that I read that limits the Department to merely reviewing constitutional changes for problems with federal law, conflicts with law. But additionally, these are sovereign nations. Suppose hypothetically the Cherokee Nation wished to be registered as the Sioux Nation. Would that violate federal law? And if not, would that recordation have to take place? I'm aware of no law that would violate, Your Honor. And respectfully, these are two, in your hypothetical, they would be two sovereign governments in the same way that the United States and Italy, if for some reason the United States changes its name to Italy, they would have to work that out amongst themselves. And indeed, I would submit that that is the proper course here. The two tribes that have this dispute must confer with each other and reach some kind of agreement. Indeed, the letter that seems to have set this all off was about a golf tournament where the Wisconsin tribe proposed that both tribes use the term Oneida. It's not my place to decide for them how to do that, but nor is it the Department of Interior's, and frankly, nor is it the federal bench. These are two sovereign governments that decide for themselves what they're called. Indeed, the Constitution... Will the Department of Interior register the same name for two different tribes? It's the practice of the Department in the List Act, which you're talking about, to simply record the names that the tribes choose for themselves. There have been occasion where in parentheticals they note a previous name or make other clarifying statements, but they do not decide what the tribe is called. The tribe as a sovereign government makes that decision. In the course of this, let me just try to nail down something that I think I understand. Was there a change in the Constitution of the Oneida tribe of Wisconsin that essentially through their Constitution authorized them to change their name? Or do I have that? I think that's correct. I'm not sure if authorized is necessarily the right word because it just said, this is our name. Did they authorize themselves to call to make a name change? They called themselves that. Correct. They just said, this is our name. And I would note that... And then once they do that, the Department of the Interior, if I'm understanding you correctly, just registers that name. Provided it doesn't violate, well, provided the Constitution doesn't violate a federal law, the Department of the Interior... Provided the tribe's Constitution does not violate a federal law. If all that Constitution does as amended in my hypothetical, which I want to assure you it is, gives itself a new name, you know, the Oneida tribe of Upper Wisconsin, then they would just come to the Department of Interior and register that name and the department would have to log it in. That's correct. The department shall approve the Constitution. That's the citation I had earlier. And then it's the list that is, you know, an informational list the department keeps. They just record what the tribe calls itself. Hypothetically, if the Oneida Indians in New York amended their Constitution to call themselves the one and only original Oneida Nation, the Department of Interior would have to accept that and record it. Correct. And, indeed, the Department of Interior would have no role in the constitutional amendment process because plaintiff and now the Wisconsin tribe have written the department out of their constitutional approval process. So I would submit that just as the plaintiff New York tribe has changed its name, the Wisconsin tribe now could change its name without any action by the department. And we've seen that the Wisconsin tribe wants to be known and, in their opinion, has been known for hundreds of years as the Oneida Nation. It's simply not the Department of Interior's role to tell them what to call themselves. Their role is limited to whether constitutional amendments violate the law. I'd like to point out one very important point that goes to the trademark dispute, which is, of course, heard in a different forum, and this is not a trademark. That's suspended right now. That's correct. They seem to think that what we're going to do would have a bearing on that, which would seem to support the plaintiff's view. I think if you look carefully at what the trademark board did and what the applicable standard is, it is not that it has a substantive bearing on the case, this case. It's that it's related. And there's no dispute that this is related and colloquially. But regardless, plaintiff's counsel, in their response to the motion to dismiss, conceded it is, quote, irrelevant, that is a direct quote, to the substance of the trademark dispute. The district court found the same. The Wisconsin tribe believes the same. They said in a submission to the trademark board, yes, we've referred to our name in our pleadings, but we could take it out. It would not change any of the merits of the claim. The merits of the claim concern abandonment that occurred years ago. And fraud in the procurement, right? And fraud, both of which occurred years before the name change here. So, Your Honors, I'd like to focus for a moment on redressability. These are two sovereign nations. The Wisconsin tribe, in their own words, has referred to themselves as the United Nation for hundreds of years. There's evidence in the record they've done so, not universally, but at least since the 90s in some way. At Lambeth Gate, Lambeau Gate in Wisconsin, thousands of people every day travel through the Oneida Nation Gate. This is a big stadium there. The Oneida Nation would be free to refer to itself that way in its dealings with the public, in its dealing with the courts, in its dealing with other tribes, and indeed has done so. Nothing this court can do can bind that non-party, and nothing the Department of Interior can do can bind them to not refer to themselves, say, on their website or in their gate at a stadium as the Oneida Nation. So I would submit that there's simply no redressability here. Looking at the complaint's allegation, not looking to any other facts, plaintiff's own complaint, says the Wisconsin tribe started referring to itself and creating confusion starting in the 1990s. This simply isn't a dispute that the courts or the Department can resolve. It should be resolved by the respective sovereign tribes themselves. Or put, in my view, somewhat differently, but tell me why I'm wrong, that the court can tell the Department of Interior it has to do that's going to make any bit of difference. Yes, that's correct, with one caveat I alluded to slightly earlier, which is while at the time of the constitutional amendments of the Wisconsin tribe, their constitution required the Department of Interior to approve these, that has subsequently changed. They removed that provision from their constitution entirely. So now, like the New York tribe, they can amend their constitution without any involvement of the Department of Interior. And I would submit to you that as they amended it before, evidence from plaintiff's own complaint shows that they are likely to do so and there would be no effect. No, and we're not arguing at cross purposes that that's sort of a collateral effect. I want to take one. You're done, right? Yes. Okay. Just a very quick question out of my own curiosity. I note that you're with the Environmental Division. Does the Environmental Division at DOJ provide the attorneys that argue cases that involve the Department of the Interior routinely? Yes. There's somewhat of a complicated process of assigning particularly who it is, but the Department of Justice represents agents. No, but I mean the Environmental Division. Yeah, depending on the type of case, Environment Division attorneys will represent the Department. You get Indian nation claims. Absolutely. The particular part of justice that I work for routinely handles many disputes involving tribes. Great. Well, thank you. Thank you for coming up, Mr. Schiffman. Thank you, Your Honor. Mr. Smith? You're the local guy. Not so local. I live with him in Washington. Okay. Notably, I think, most of the previous discussion has been about merits issues. This is an APA case in which no record has even been filed. There's been discussion about what the department's policy is. We don't know the department's policy, except as the complaint indicates, we were told something during this process when we asked for a reconsideration. The merits issues are something that will be decided if the standing to litigate them is established. I'll say this, though, about the merits issues. The idea that this is just a list and that this is just a tribal dispute is very wide of the mark. What the federal government does matters, and it has the obligation to obey the law. It made two decisions here. Judge Hall, you asked about the first one involving the Constitution. The Wisconsin tribe was obliged by its Constitution and federal law, I think 5123, to have federal approval of the amendment to have the name changed, and that approval could not be given, 5123 says, if it would violate the law. I'm going to come back to why it would violate the law. The same legal principles relevant there governed as to the assistant secretary's decision to recognize a new name and publish it in the list. The decisions of the Department of the Interior are always guided by the federal trust obligation to Indian tribes. It's uniformly expressed in judicial decisions as a fiduciary duty. It may not lead to a particular answer in this dispute, but it at least means it has to consider the interests of the Indian tribes when it makes a decision. Let me ask you this. They have to consider the interests of the Indians. Has anybody given any consideration to whether the Oneida Indians in Wisconsin, in whatever form and under what name they operate, should be necessary parties here? I mean, you're asking a government agency to change the Constitution of a sovereign Indian nation that is not present in this lawsuit. No, Your Honor. That's peculiar. The issue has not been raised, and it has not been briefed, obviously, and I do not believe in an APA action challenging a federal decision that a party withstanding to challenge it has to join all parties who are interested in it. I understand the party you raise has a particular interest. I don't mean to diminish it by saying all parties, but I don't believe the obligation exists in any respect. Doesn't that affect redressability? No, Your Honor. The whole point we're trying to make. You're asking a federal agency to withdraw approval of a Constitution of a sovereign Indian nation without giving them due process or so much as a letter of inquiry. Well, not at all. We're asking for a process in which their interests and our interests are heard and considered, where no one is excluded and no one is ignored. In challenging the federal decision under the APA, they can intervene and be here if they want, but there's no obligation to join them, and we're not asking that something be done at Interior as was done in our situation without telling them and without hearing from them. The idea that the federal decisions here, made pursuant to federal statute, both of them, the constitutional approval decision and the decision to recognize a new name on the list, have independent consequence. The third harm that's claimed in this case is to the status and identity of the nation. That solely stems from the federal decision. It has nothing to do with what the Wisconsins call themselves. It solely exists because of the apparent diminishment of the status of the New York Unitas. The harm that's claimed as to the ability of the Wisconsin tribe to use federal recognition in making legal demands and mounting legal attacks is a harm that solely or at least substantially relates to the federal recognition. The recent crew decision makes the point that it doesn't have to be the sole source of a harm. All you have to decide in this case for standing is that the harm is at least an identifiable trifle, that the decisions being challenged had some meaningful impact on the harms, and that an order redressing them that may lead to a reconsideration in the department will do something to reduce the harm. It's not required, and Lujan and the crew decision are clear about this, it's not required that we dispel all alternative causes of harm or that we show that an order will redress every bit of the harm alleged. All right, so let me go back to the phrase you used, which was said, we'll do something to reduce the harm. What is that? What I've been referring to, number one. What is it ultimately that will occur that will reduce the harm? Three things. One, the insult and diminishment to the status and identity of the nation from the changed federal recognition will evaporate. Because? Because, well. Not why will that downstream because, because what will have been done that will make that occur? If a favorable judgment is entered in this case, it will at least require the department to reconsider its decision in a fair process. It's reasonable to believe, maybe I should just say plausible because I'm not predicting the future, that the department will come to a different decision. If it does, and if it returns to the old way. A decision to do what? To return. To understand that they don't have, you tell us what your name is and we put it in the register. Oh, that's absolutely wrong. I gave the first reason that's wrong is that the, first of all, I don't know that that's the policy. We don't have a record. But it's wrong first because the federal trust obligation prevents that. It's a violation of the federal trust obligation to turn over the federal list of recognized tribes to the Indian tribes of the country. Section 51. You mean turn over the control of the list? Yes, at least in the sense, I don't mean to exaggerate it. No, I'm just trying to figure out when you say turn over the list. I mean if they walked in and said can we see the list. No, no. I didn't mean it in a concrete way. Okay. I meant it in the sense that the federal recognition of the names of these tribes should not, the whole list of that should not be turned over to the tribes. Section 5131 makes it clear that the department is to have an accurate list. An accurate list is not a confusing list. Section 5123F makes it clear that the department should not take decisions that affect, that enhance the status of one tribe vis-à-vis another, which is what we allege here. If the department decides to change its decision, as is at least a reasonable possibility, the Wisconsin tribes' standing allegation in the pending litigation will no longer exist. It will have evaporated because it won't be true that there is harm from failure to use their federally recognized name. And in the future, when there are conflicts here, and the Wisconsin tribe in situations that cause harm to the United Nation calls itself the United Nation, we can complain of the harm in court or elsewhere, and we're not faced with the defense, but we are federally recognized that way. So you've got status and identity issues that are wholly dependent on federal recognition. Those latter things, sort of the hypothetical situations that I think it's lieu on, but at least some, one of the pronouncements from on high, on standing, have said we don't consider. No, I would say it's exactly the opposite. The hypothesis here is about what might happen other than an impact from the changed federal recognition. We have a record here. The complaint pleads what happened. The Wisconsins did not. A letter that was misaddressed or somebody. No, no. I'm not talking about those letters, although I think the Indian Health Service letter is pretty compelling, but let me go back to the more compelling evidence. We have a history. We know that there was no challenge to these marks until the federal recognition weapon could be wielded in a demand letter and in court. We know there was no harm to the status and identity of my client until the federal government pronounced that it recognized the Wisconsins differently. That doesn't flow. That may or may not give them standing. No, that issue. Down where you're, which in the proceedings that are stayed right now. You haven't lost those proceedings, right? No. They're just sitting waiting for something to happen when you guys say, yeah, let's get going again because the circuit did this or did that. You can still fight all, duke all of those out and deal with it. Correct, but we will be duking them out without the force they get from alleging federal recognition of their name. If you look at the TTAB stay orders, they're not shoulder shrugs that say let's just wait. They refer, there's two of them. There's the stay order and then the order denying reconsideration. Both of them refer to the Wisconsin's use of federal recognition to substantiate standing, but they don't do it in those terms. They refer to the allegation. They don't call it standing. By alleging that they are harmed by failure to use their recognized name. If you looked at nothing else in this case, if the department were to change to its historic practice, that element of standing would disappear and that's sufficient to give us standing in this case because it establishes all of the elements that are required for standing. On that note, thank you very much. Thank you, Your Honor. Thank you both. We'll reserve decision in this case.